Union Carbide v. Richards and I guess Ms. Snyder is up first. May it please the Court, I'm Kathy Snyder on behalf of Union Carbide Corporation. This case concerns whether Congress intended, with the amendments to the Black Lung Act contained in the ACA, to nullify 30 years of precedent regarding the application of res judicata to subsequent survivor's claims. The Board's holdings that the ACA applies to these claims should be reversed or vacated. You know, I don't think your general proposition is susceptible to challenge. The more precise question, as I see it, and you can correct it and reframe it, would seem to be the survivor's first claim existed under a different statutory scheme than the second claim. And if the second claim removed or changed the elements of proof, then your question about res judicata doesn't apply. I actually think there's some more difficult questions in this case than the way you raised it, but it seems to me, if I understand it, just to get us on the discussion, she filed a claim and was denied, and let's assume she was unable to show that death was caused by pneumoconiosis. She filed a second claim under a new statutory scheme, and she doesn't have to show that. Isn't that right? That's correct. So basically, Congress is changing, giving her like a joint annuity claim. The benefits go to the life of the minor plus her life, or until she gets married. And before, they didn't do that. It goes to the life of the minor, and for her to get benefits, she'd have to show that the death was caused by pneumoconiosis. And so they eliminated that in her demonstration of her claim. Now, it's hard to think that that second claim is bound by the adjudication on the first when proof of pneumoconiosis is no longer required. You have to assume the first was denied because she failed in that proof, and you conclude the second should not be denied because Congress didn't require it. Now, that to me is the problem in the case. Is that a res judicata problem? I think actually it's two problems, Your Honor. Res judicata does apply there, but also it is a problem of whether the first claim and the second claim are the same cause of action. It is the same. It's for survivor benefits, but in the first cause of action, she had to show causation from pneumoconiosis. She failed. But Congress then said, we're changing it. You don't have to show pneumoconiosis. You can ride the coattails of a minor. If you've got benefits, she's going to get benefits. That's her second claim. So now she is able to make the second claim because she doesn't have to prove the causation by pneumoconiosis. That's totally different from the first one. The first one clearly can't bind the second one because the second one doesn't require the proof that she failed on in the first one, causation. Well, Your Honor, we would argue that it does bind because even though she has a lesser burden of proof here, that that doesn't make this a new cause of action. This circuit has addressed the... No, but you know, res judicata goes back to the notion you get one good shot. We're not going to relitigate one good shot. And she's had that. Except the cause of action had a totally different character. They changed the cause of action. She had to prove in her own right that the death of her husband was caused by pneumoconiosis. Now she has a survival claim under the tort notion of survival. She gets whatever he gets. If he was getting benefits, she gets benefits. That's a totally different notion. It's no longer the proof of causation. Isn't that reinforced by the fact that the date of the reinforcement of benefits is not from the date of the minor's death but from the date that the first claim was denied, suggesting that we're dealing with two different causes of action? We would not agree that it is two separate causes of action because what has been done is a procedural change rather than a substantive change. I think Judge Boggs does a very good job at her dissenting opinion before explaining that. That's the problem in the case, and that isn't what you addressed. I think that is a dicey problem, what the dissent raised below, because the statute was changed in one place and not in another. And the question is now what did Congress mean? Congress clearly wanted her to have the benefits her husband was receiving, right, in the new statute. The new statute, 1556, is silent as to widows who had a claim before and were denied. I think that it is true Congress intended for her to be denied because she failed in an element that's no longer needed. But removing that procedural element does not create a new cause of action. Essentially what has happened is it seems to me the causation of an element is more substantive than you give it credit for. You don't have to prove that pneumoconiosis caused death. You're removing the big problem for widows. Your Honor, that goes to the actual statute that's being amended. 932L states that all it does, it is a procedural mechanism by which it says that survivors are going to be it was actually placed into the act because the backlog of the survivor's claims had gotten so big that they said, okay, what we're going to do is we're putting this provision, 932L, into the Black Loan Benefits Act and we will remove this burden from the survivors and they will no longer have to file a claim. And the actual language of 932L Under the new statute, this is a hypothetical, not your case. A man is receiving benefits, black loan benefits. He comes home from the bar one night, hits a tree and dies. The woman goes in and files a claim under the new statute and says I want to continue his benefits. Does she receive them? If she has not filed a claim before, then yes, she receives them. Then I don't understand your argument. She's receiving them. He died from a car accident. He didn't die from pneumoconiosis in my hypothetical. And you're arguing, well, the substantive law says you have to prove pneumoconiosis. But the new statute says you don't. And you agree with me that if he died from a car accident, she continues with the benefits he was receiving at the time of death. Yes, I do agree, Your Honor. And I agree that what was removed from the 932L was a burden of proof. She is relieved of that burden. She doesn't have to show it. There's a whole element, causation element. As a matter of fact, before, if a minor died from an automobile accident, she would never receive benefits. It would end with the minor's death. That is correct. But again, that was a removal of the burden of proof. That doesn't create a new cause of action. I don't think you're going to persuade us that it's a question of burden of proof by repeatedly saying that. Can you do a little better to persuade us that the venerable, procedural, substantive dichotomy that we all studied in law school actually gets you home here? Because all you keep saying, in response to Judge Niemeyer, is it's procedural. It's a burden of proof. It's not a burden of proof. It's an element of a claim. And the question, it seems to me, is, is the element so important to the nature, character of the claim, that we can say this is a different claim? This is truly a new claim. Can you articulate your point perhaps a little differently, simply by calling it a burden of proof difference? I can try. Okay. Your Honor, under the court's precedent in the Nash case, Nash County Board of Education versus Biltmore, there was a test set forth by this case, or by this court, in terms of a three-part factor test of how you determine whether it is a new cause of action once a case has been refiled for the second time. And under that test, the only element that is in dispute here at all is whether or not the two cause of actions have identicality. And this circuit, and the precedent in this circuit, has gone to the transactional approach to res judicata. And under the transactional approach, it is the operative facts, not the legal theory. Because you've agreed with me that the wife gets no benefits under the old statute if her husband runs into a tree. Under the new statute, she gets benefits if he runs into a tree. If she hasn't filed a claim before. I understand. Let's leave that aside. That's another problem. Because we can address that problem. I'm talking about whether the statute changed the elements. You said it's just procedural. But it can't be procedural if before the minor dies from unrelated causes, a car accident, and he's receiving benefits, she did not get benefits. She had to prove that his death was caused by pneumoconiosis. And it was, in fact, caused by a car accident. Under the second, the new statute, he dies from an automobile accident, and she gets benefits because he was receiving benefits. The nature of her claim now is basically a common law tort survival claim. The claim he had during his lifetime survives during her lifetime or until she gets married. That's what Congress did. Now, whether they called it procedural or not, you have to look at the real substance of what's being done. And you haven't given me an explanation of why the second claim isn't different than the first claim. It's totally different. One is she has to prove in her own right that he died from pneumoconiosis, the death. In the second one, she doesn't have to prove that at all. She just has to prove he was receiving benefits, and she succeeds to it. Your Honor, accepting the hypothetical that it is two different situations, it's still her second claim here is still barbell. No, stick with the first of my hypothetical. You don't gain any benefit. In other words, if it's different, it answers this case. Because if it's a different claim, and I suggest it's a totally different claim, I suggest it's now just like a joint annuity Congress created. If the guy was receiving benefits, she receives benefits to her lifetime of marriage. Before, if the guy received benefits, she doesn't receive benefits unless his death was caused by pneumoconiosis, and she had to prove that. We would argue that that is derivative benefits. It's a legal theory. It's the legal theory that she's awarded on has changed. Which Congress did, right? That is what Congress did, but it's not a new cause of action the way this court has defined it. Forget the definition of new cause of action. It's something new, right? Substantively new. It is a change in the law. It's not only a change in the law. It doesn't even have the same elements. Her claim doesn't have the same elements anymore. Your Honor, may I answer? Oh, yeah. We have to carry this dialogue on. It does not have the same elements. It does not have the same conditions of entitlement. But even if you accept that this is a new element of entitlement, it is still not. It's actually elimination of an element. It just makes it much easier. The fact that it was adjudicated against her under the old scheme would have no applicability under the new scheme because the new scheme has different elements. But if you accept that every time Congress changes the law, that it overrides res judicata, then there would be absolutely no basis in that fundamental doctrine that we've applied in the Black Lung Act for 40 years. It has always been a widow's claim has always been denied because there can be no change in the operative facts. Once he's dead, he's dead, unlike a living widower. I thought you were going to argue something different, and I want to hold you here for a couple minutes. The substantive requirement for a survivor's claim remains proof of causation for pneumoconiosis. They didn't change that part of the statute. Isn't that right? They did not for minors if the minor has not been awarded. If the minor has been awarded, then it has... He's dead. The only person... In other words, what is the provision of the statute that says the survivor has to show causation by pneumoconiosis? Well, you were looking... 932 was what was amended, and that's what took that element out of the statute. Which section? I'm sorry, Your Honor, you're asking which section? Which section sets forth the fundamental elements that shows that a death has to be caused by pneumoconiosis? I'm sorry, Your Honor, I can tell you that on rebuttal. I don't have my statute book with me. Anyway, that's the problem. Congress left that in place, and they made this new change, and there seems to be some tension. But it seems to me Congress clearly made a change. We would agree they made a change. And there may be some implicit overruling or whatever. That's the argument I thought you had, but they clearly made a change which makes the res judicata... You can go through the formulas you talk about. The res judicata is to give you one fair shot at a claim. She had one fair shot at the old claim, but under the new claim she never had a fair shot, which is a claim where she doesn't have to prove that the death was caused by pneumoconiosis. And you argue, well, it doesn't matter, she had her shot. I don't know how you could force her to file a claim, give her the benefit of a claim where it was not established at that point in time. You're saying, oh, because it arises out of the same cause of action as the survivor's case, it's just too general. Your Honour, then what would we be adopting would be a per se exception to res judicata, that every time there's a statutory change... It's a new claim under a new statute. It's her first claim under this statute. We would go back to it's not a new claim, at least not by the way that this court has defined what a cause of action is, because he was receiving benefits when he died the first time she filed her claim. The fact hasn't changed. Her survivor's benefits, her cause of action, was dependent on another element. Not only was he receiving benefits, but she would also have to show that he died because of pneumoconiosis and not because of a car accident. Now, that's a pretty serious thing. She has a new element for her survivor's claim. Under the new statute, all she has to show is that he was receiving benefits, and it doesn't matter that he died from an automobile accident. It is a lesser burden of proof that she has to show. She doesn't have to make that show. I understand your position. Thank you, Your Honor. All right. Mr. Solomons, is that who we hear next? Good morning. My position is a little bit different. Congress amends statutes all the time, and they change criteria all the time, and there is a substantial body of case law which addresses retroactivity, race judicata. It addresses the identity of a cause of action and what constitutes a cause of action, and all of that case law applies, it seems to me, in this situation because what seems to me to be untenable is that because Congress changes criteria, I think the Supreme Court agrees with me on this, that everybody who lost before, whether it's a black loan claim or a patent claim or whatever kind of claim it is, can come out of the woodwork and file a new claim because they have a new cause of action under a statute that has been amended that worked against them the first time around. I think that, first of all, you have a couple of really critical elements, I think, here. Number one, or maybe not number one, but I'll get it out of the way. You think Congress could not do that expressly? Yes, Congress clearly could do it expressly, and Congress did not do it expressly. Here, as a matter of fact, everything that you read in this statute, the 2005 bar date, in my case, I believe in the Union Carpet case, they filed before 2005. Congress was concerned with retroactivity. There is a powerful presumption that has been stated by the Supreme Court over and over again against a courting retroactive effect to statutory changes in the absence of a clear congressional intent to do so. Land graph, bunch of cases. We have in the Longshore Act, which applies verbatim in the Black Long Act provision, which defines finality of determinations. It's 921A and 921E, and it says once you're done, if you don't file your appeals, you're finished. The decision is final, and we all know what that means. When a decision is final, then you can't redo it, it seems to me. Well, I suppose one could argue that the decision made in these earlier cases was final to the extent that benefits are being denied retroactively to the date of the minor's death. Here, the benefits are being supplied prospectively based on the change in the statute. What about that? Well, I think it's a gimmick. To be frank, it doesn't do my client any good, but you've got a statute that says benefits date from the date of the minor's death. It's a gimmick factory in Washington, D.C., with a big dome on it. We see a lot of those gimmicks. Okay, I don't defend that. I'm not here to defend that, but it is a gimmick, and I frankly agree with it. I mean, if I was arguing that case before the Benefits Review Board, which I didn't, then I would say you've got a statute that... I think that we all have an obligation to read statutes, and we all have an obligation to read the law, and we have a lot of law about race judicata. We have a lot of law about what constitutes a cause of action. What about the fact that the statute here doesn't distinguish among claimants at all? In fact, we've said as much in states. Well, sure it distinguishes among claimants. It says that... Well, first of all, what the Department of Labor says... Hold on a second. It says all claimants, so tell me how... It doesn't. It does not say all claimants. Go ahead. It says claimants. It doesn't say all claimants. It says claimants. It doesn't distinguish between... That's right, and... Hold on a second. It does not distinguish among original claimants and subsequent claimants. So tell me why that statute doesn't work against it. Okay. Well, first of all, you have the Supreme Court's take on this kind of statutory change, which says that if the intent to waive finality of a prior determination is not expressed and clear, and in the statute, not in the Labor Department's mind, then you're not going to be able to redo a prior adjudication. But let me say more about that. I'm troubled by giving the back of the hand to the change as just a change. I see this under the old statute. She had to establish a claim in her own right. That is, she had to prove, in order for her to get benefits, she had to prove more than the minor proved. The minor only needed to prove he was disabled due to pneumoconiosis. She has to prove, in addition that he's receiving benefits, she has to prove he was receiving benefits and that he died due to pneumoconiosis. Her gateway for a claim is that he died due to pneumoconiosis, and she had to prove that. She tried to do that, and she couldn't prove that because he hit a tree. So they denied it. Now Congress comes in and says, hold it. We're taking that element away. The woman does not have to prove a separate claim. She can coattail under her husband's claim. Her husband was receiving benefits. If he dies, she receives the benefits. She says, okay, now I want my claim. You come in and say, that first adjudication bars the second. And then you don't argue the two claims. You argue, oh, this principle's a res judicata. They've been longstanding, and we've articulated in the cases, and we cite a formula. The res judicata goes back to one principle. We give you one fair shot, the same as double jeopardy. Our law gives you one fair shot in court, and if you've had that shot and it's been adjudicated, you don't get another one. That's the principle, and in this case, she tried a different case. She had to prove that her husband's death was caused by pneumoconiosis. Now she just gets his as a survivor. It's like a joint annuity. Now, you tell me that's the same. I don't see it. I don't tell you that's the same. What I'm saying is that there is a substantial body of law that addresses that, and I think if you're dealing in an abstract... Your Honor, this is a statutory change. How is this statutory change of criteria different than any other statutory change that Congress may make in any other kind of statute? If the old cause of action required four elements, Congress changed the law and took out two elements. What if you had an antitrust claim, and you lost, and then Congress changed the law, and you could have won? Congress changed the law, changed the elements. It is easier to prove the case. Okay, what if they did? Do you get to do it again? Of course. You do not. The law says you do not get to do it again. You lost because of one of the elements that's been discharged. Your Honor, that's just not the law. I'm sorry. I mean, we have cited lots of cases. Could Congress abrogate claim preclusion in a category of cases decided by the federal courts? No. I mean, that's a separation of powers issue. I think they can't do that. They can't do that? They cannot do it. Ploutt v. Spencer Farms. Now, I notice that your due process argument is at the very back of your brief. It always are. That said something to us. Do you contend that your client had a property right protected by the due process clause in your victory over her first claim? We have a property right in finality of adjudication. Well, you're going to have to do a little better than that. There's no such thing as a property right in the finality of an adjudication. You either have a property right that can be monetized in some way, I would think. So are you saying that Congress could not say, we think that we've been too harsh with widows and widowers and survivors, and henceforth, we're going to afford survivor's benefits to those, whether or not they have previously adjudicated a claim in law? That would be OK? Let me put it this way. I think if Congress said, we're going to do all this, and then we're going to give everybody benefits. We don't even care whether they're disabled or whatever. We're just going to give all coal miners benefits. Same thing, really. And they said that. And do I have a property right in having, you know, going back to them? Well, I'm sorry. You're not really answering my question. And it wasn't a great question, I admit. But what I'm trying to get you to say, and I think you may have said it already, is it your submission, as you suggested to Judge Diaz, that the problem here is that Congress wasn't explicit enough? Or is it your submission that the gimmick makers under that dome in Washington simply don't have the authority to do, even if they said, and by the way, when we say claims, we mean all claims. They didn't say that. But it's a fair reading of the statute. I don't think so. I mean, you have to agree with you. I'm sorry. I'm just not following your answer. OK, well, I hadn't finished it. Well, give an answer, and then I can follow it. Yes or no, Congress has the power or not. To open up all claims and pay them? Sure. I think there would be a due process issue there. Wait, wait, wait. You just contradicted yourself. You said Congress has the power to do it, but there'd be a due process problem. If there's a due process problem, then Congress doesn't have the power to do it. Congress didn't do it here. They didn't do it. Why didn't they do it? They didn't do it because they were concerned about retroactivity. It's perfectly obvious in the statement that Senator Byrd made. It's obvious in the text of the statute where they have a 2005. Did they say that or that indicated that? Well, they put a 2005 bar date on the claims that would be subject to this. I mean, that only could be there, and I know for a fact that it was because there were concerns about retroactivity when this law was being passed. That's just the volume of retroactivity. It's not the notion of retroactivity. In other words, the problem for you, and I think it may be a serious claim, I don't know, but if surviving spouses were not receiving benefits when the spouse died from an automobile accident, after he's dead they come in and say, oh, we're going to change that. We're going to say now when he dies because of an automobile accident, we'll still give you benefits by reason of his death because he was receiving benefits before his death. Now there you're getting to a question of you have past facts and Congress is now giving the spouse a benefit that she didn't have before and you have to pay it, and that might raise some problems. Your Honor, what I'm saying is that if I can, I mean this is no different than my antitrust analogy, than a patent analogy. They change criteria all the time, and in no case unless Congress has expressly stated otherwise, no case are they permitted to read, are people who lost under the old law permitted to re-adjudicate because they would win under the new law. There is no case that allows that. There are many cases that hold, we've cited a lot of them, that with the absence of express intent on the part of Congress, res judicata applies and it bars the re-litigation of those cases and the cause of action is whatever arises out of the operative facts. The cause of action is not defined by the statute. The cause of action is defined by the relationship between the parties. I'm not making this up. This is in the case law. I understand. It has to make some sense. Cause of action is granted by Congress. Right? The cause of action as it is defined in the cases is not defined by the details of the criteria. The claim of a spouse in this case for survivor benefits is defined by the statute. She doesn't get anything unless the statute gave it to her. That's not a, a cause of action didn't come out of the blue. I'd like to see the case you cite to support that because there are none. What? There are no cases to support it. The cases all go to other, the cases about retroactivity, res judicata, and the identity of a cause of action, those are the issues that are presented in this case, the legal issues, and none of them favor a re-adjudication in this case because of Congress. I'm not talking about re-adjudication. I'm talking about a cause of action. A cause of action that was granted by Congress. It did not exist before Congress created the act. Yeah, the cause of action existed. She had a cause of action arising out of the fact that the employer, her husband's employer or wife's employer injured them, and that is where the cause, that is the operative core of facts. And I'm making it up. This is in the cases. This is in the cases. Res judicata is not something that we look for gimmicks to get out of, and retroactivity is not something. In the Americans with Disabilities Act, perhaps one of the most prominent recent examples, Congress essentially abrogated a number of Supreme Court decisions dealing with the definition of a disabled individual. Congress pretty much explicitly made those amendments non-retroactive. So I posit this hypothetical to you. A person sues before the amendments seeking a reasonable accommodation, a hearing-impaired person in an employment context. She loses under the unamended statute, but she continues in her employment. Two days after the amendments take effect, she's still in the same employment, same employer, same job, same lack of an alleged accommodation. She brings a lawsuit. Res judicata bar the claim. No, it doesn't. And I've got an expert. Of course, and I don't expect you to be conversant on anything. But I want to ask you in the little bit of time left, I want to ask you to compare that hypothetical to Judge Niemeyer's hypothetical of the widow or widower who loses because she can't prove causation. The statute is amended. Now she comes back, and she is able to prove what's necessary because Congress has provided not a lower burden of proof, as your sister counsel here says, but a different claim with different elements. I think there's a clear distinction here. First of all, in the case of the hearing-impaired person, when she's still working and is still hearing-impaired, then there are new facts that give rise to a new cause of action. It is the operative core facts that give rise to the core of action. Those facts of her discrimination at that time, after the enactment of the new statute, didn't exist when the original claim was filed. She has new facts. In our case, there are no new facts. The operative core is the same thing. What are the new facts in my hypothetical? She's still working, and she's being discriminated against. That's not a new fact. She was working before the amendment. She's working now. How is that a new fact? I think it's a word game, Your Honor. You're playing with me. I don't play games with counsel. It is a new fact because she is being discriminated against under the new statute. That's why. This widow, the black-lunged widow, is not being disadvantaged under the new statute. The new statute has nothing to do with her. Her claim was adjudicated. We have these principles that we're talking about here, retroactivity, res judicata, and the nature of a cause of action are powerful, central, fundamental principles in our jurisprudence. And if you don't like them because it's a black-lunged case, there's nothing I can do about it, but I will tell you that those principles, I'm sorry, I'm sorry, but those principles, it seems to me, are the important principles that we need to talk about. And these principles do not, by any case I have read or seen, support the proposition that res judicata is waived and that this woman now gets something that she lost on before. She didn't lose before because they didn't adjudicate it. Same thing in the antitrust case. I mean, you can make the same argument in the antitrust case, the patent case. I don't trust hypothetical either because if you take away an element, the conspiracy element, you don't have to have a conspiracy anymore. You have a totally different cause of action. And the question may come down to what you think of as a cause of action, but I'm suggesting to you her benefits before required to show causation that the death was caused by pneumoconiosis, a very narrow class of death. Now she can show that the death was caused by anything, that his heart doesn't beat anymore. I am not offering my definition of cause of action. I am offering a judicial definition of cause of action. What's your definition of a cause of action? The judicial definition of the cause of action is the operative core facts out of which the claim arises, which is the harm done to the person. It is not what's in the statute. That's the cause of action. Well, like I said, I'd be happy to say. I have not seen a case that defines it that way. Okay. We'll hear from Mr. Gilligan. Thanks. May it please the Court, my name is Ryan Christopher Gilligan and I represent the respondents in this matter. The Affordable Care Act instituted amendments to the Black Lung Benefits Act, which in this case have provided an independent basis for entitlement that was previously unavailable during the initial litigation of the respondent's claim. And it is not barred. This new action is not barred by res judicata. The purpose of res judicata is to serve as a shield, to prevent claim splitting and to conserve judicial resources. What the petitioners are advocating in this case is to use res judicata as a sword to end a claim for entitlement that could not have been asserted in the prior litigation. Could you spend please just a few seconds explaining as succinctly as you can how res judicata, apart from the ACA amendments, how does it typically work in the black lung context? Well, yes, Your Honor. Either minors or survivors. How does it work? Well, if we took an example of a minor. A minor is allowed to file a subsequent claim, but that subsequent claim is not automatically granted. The initial inquiry that the administrative law judge has to look to is whether there's any – You mean in the second claim or – In the subsequent claim. In the subsequent claim. Okay. So a minor files a claim, loses – We could say the minor files a claim, doesn't prove any elements of entitlement. So the initial inquiry in the second claim is whether, per this court's decision in Lisa Lee Mines, whether the minor has demonstrated a change in conditions, whether he's proven that he suffers from the disease or total disability and causation. Because he may not have had it five years ago, but he may have it today. Yes, Your Honor, because it's – Now, how would those principles apply to a survivor, if at all? Well, to a survivor, and I believe this court addressed it in Lisa Lee Mines, after the litigation of an initial survivor's claim that requires the element of death causation, that element is not subject to change because the minor, of course, has passed away. But when speaking in this form, in this case, automatic entitlement was not available. Had Mrs. Richards and Mrs. Morgan pled, were entitled to an automatic award of benefits in their initial claim, the court would have rejected it because of the 1981 amendments, which limited the applicability of automatic entitlement to cases filed after 1981. So pre-'81, there was automatic entitlement. Yes, Your Honor. Congress changed the law, no more automatic entitlement. Yes, Your Honor. Congress changed the law again. It says now we're going to have entitlement. Yes, Your Honor, and they did that through Section 1556. Right. And Section 1556 is entitled equity for certain eligible survivors. And so Congress could change its mind next week. Yes, Your Honor. And take away, right? We hope not, but yes, Your Honor. You hope not, but Congress could do that. Yes, Your Honor. Because this is in the nature of a remedial, almost just a benefit. I mean, it is a benefit statute. The whole purpose of the statute is to afford benefits. Yes, Your Honor. This isn't like the common law of antitrust or Section 1 of the Sherman Act or the Americans with Disability Act. This statute's purpose is to afford benefits to beneficiaries. Yes, Your Honor. Of Congress's choosing. Yes. Okay. In the Section 1556 amendment. Let me ask you this. Mr. Solomon, I guess, would respond by saying in the example of the minor, there has been a change in the operative facts,  what change in the operative facts do we have here other than the change in the law that entitles the survivor to benefits? Yes, Your Honor. The core nucleus, the facts that gave rise to the trial unit in the first case were medical issues. In this case, the facts that trigger automatic entitlement, it's not medical issues. It's facts. That the minor received an award, that the minor passed away, that the survivors meet the filing requirements of 1556C, and they're still eligible survivors. So in this instance, the fact that the minor was awarded benefits in the initial claim had no bearing on the outcome. So in this case, there's a new method of entitlement that's completely not tied to the litigation of the issues in the prior claim. Death causation was not proven, but Mrs. Richards and Mrs. Morgan don't need to prove death causation. As Justice Niemeyer suggested, benefits accrue because of the minor's disability. We believe Congress made this change to compensate survivors who lived with a lifetime disability with the minor, and that was their decision. And it's clearly manifested as a broad humanitarian effort. How do you account for the – and Mr. Solomon touched on this briefly – the so-called – he characterized it as a time bar in the statute. How would you characterize it, and what work, if any, does it do in the statute? Because that, frankly, troubles me. There has to be some import to the dates that were attached to this amendment. Yes, Your Honor, and I believe this court first dealt with this issue in Stacey. And the court found that 1556C – claims means just that, all claims. As you mentioned earlier, it is all claims, and it doesn't distinguish between initial and subsequent claims. And therefore, Congress, by providing this retroactivity, clearly wanted to encapsulate more claims than less. And it's supported by Senator Byrd's statements of – when reading his statements in totality, it's clear to us that he meant for all claims to be encapsulated. And so by – the period of retroactivity relates to the date of the filing. And we believe that by enforcing the statute as it's written, it adheres to the retroactive period envisioned by Congress. Is it the best that Senator Byrd could get his colleagues to go along with? Is that what it amounts to, 2005? Your Honor, I can't speak to the January 1, 2005 date. I think it's – as we argued in Stacey, it's a classic line drawing by Congress. Part of the gimmick making? I don't believe it's a gimmick, Your Honor. I believe it was a humanitarian effort to provide compensation. But it doesn't affect your client's case because all she has to do is refile for benefits. Is that the burden, the fact that someone has to take an affirmative act in order to receive benefits? That is correct, Your Honor. Congress did not instruct the Department of Labor to notify all eligible survivors and offer them benefits. In this instance, Mrs. Richards and Mrs. Morgan had to take an affirmative step, which was to file the claim. So a survivor who doesn't take that affirmative step that is eligible is not going to receive the benefits. And so for claims that are actually pending and not adjudicated as of the date, pending – that were filed after January 1, 2005, if that's the correct date, pending at the date of the enactment of this amendment, the Labor Department automatically applies the relevant law to that claim. Yes, and that's an automatic entitlement claim that under this Court's analysis in Stacy, the Third Circuit's analysis, and now the Sixth Circuit's analysis, that survivor would be automatically entitled to an award of benefits, assuming they meet the eligibility requirements and, as Your Honor stated, the filing requirements. And furthermore, it doesn't upset the prior claim because benefits are not paid all the way back to the date of the death of the minor. So there's no reopening of claims. The Benefits Review Board found properly that benefits are paid to the month after the prior claim became final. So to the extent that res judicata is implicated, if at all, that's taken care of by this – by what you just said, that the benefits are being paid prospectively as opposed to retroactively to the date of the minor's death? Well, it doesn't infringe on the prior adjudication. It's a new cause of action that gave rise by the amendments to 932L. And there has been – Counsel says that's just smoke and mirrors, not his words, my words. Well, my understanding of the purpose of res judicata is a matter judged, and this matter was not judged in the prior suit. And therefore, it's just simply res judicata is not implicated when an independent basis for entitlement just did not exist. So in that, under my analogy, they're attempting to use res judicata as a sword simply to prevent entitlement that couldn't have been raised. So we don't think res judicata bars application of 932L. It's uncontested that the filing dates of Mrs. Richards and Mrs. Morgan's claim, they meet the Section 1556C requirements, they meet the eligibility requirements, and both survivors are survivors of minors who received a lifetime award of benefits. How large is the class? I think, Your Honor, the Director could speak to that specific numbers better than I could, but we do represent a high volume of minors and survivors, and the – I mean survivors who have been previously adjudicated, that class, that subclass. Your Honor, this is not a large class. This is not a large class simply because of the time frame from 1981 to 2010. This situation where survivors coming forward and applying under this law, we have not found it to be large. There's far more that are automatic entitlement as initial claims that fall under this court's holding in Stacy. I realize we don't have much in the way of legislative history here, but I'd be terribly surprised, given what we think we know about the gimmick factory, if there weren't people in the gimmick factory with that kind of data. That is to say, it's hard for me to believe that the President could assign this bill and the legislators didn't know how many people were potentially affected here. This didn't come out of the blue. Yes, Your Honor, I don't – Despite the absence of legislative history. There's only small post-enactment legislative history, but Congress – I think that's a Nazi moron, by the way. Congress is presumed to understand the law that it's amending, and we believe that to apply this law and the claims that meet the filing requirements with the survivorship and the award of the minor's claim fulfills the statutory language, fulfills the intent of Congress. No operator is going to go under as a result of this amendment. I don't believe so, Your Honor. I think the incidence of entitlement is going to be tied, just as in this court found in Stacy, to the incidence of total disability found by minors who worked for that previous operator. That's still the minor – for the survivor to receive entitlement under 932L, the minor still has to prove. It's contingent on the minor's success. The minor suffering from pneumoconiosis, the minor being totally disabled, that's what is now triggering entitlement for the survivor. And so it's Congress's decision to provide this type of relief for survivors of minors who suffered with a disability during their lifetime that was occupationally acquired. Let me ask you this. Reg 718-205 sets forth the four things that must be approved, right? For death causation, Your Honor, yes. Was that ever amended? No, Your Honor. To my knowledge, no. So if that's here, that provision still requires the spouse to prove death due to pneumoconiosis. The regulation, yes, Your Honor, but we believe that the statute would trump the regulation as Congress's last word on the applicability of the law to black lung applicants. Well, I'm getting to something a little more fundamental. It's a little bit along the lines of Mr. Solomons was saying, if that's the cause of action, and this is a survivor's claim under 718-205, and Congress said, we're taking away, and she litigates it and loses because she didn't establish one element. Congress takes away one element, and then she says, I'm going to file again, same facts. And now satisfies them. Is race judicata a bar? I don't believe so, Your Honor, because I think in the subsequent action, in this case, Mrs. Morgan and Mrs. Richards are barred from relitigating the cause of death. They could not bring the case and say that the prior adjudication was incorrect because we can now show that the minor's death was due to pneumoconiosis. In this instance, it's completely separate. It's a completely separate entitlement provision that is not tied to relitigating the elements of entitlement in the prior claim. If there are no further questions, thank you. Thank you, Mr. Miller. Mr. Joyner? Good morning, Your Honors. My name is Barry Joyner. I'm here on behalf of the Director. To address Judge Davis's question, there are approximately 130 subsequent survivor claims that have been filed. It has now been three years since the Affordable Care Act was enacted. United Mine Workers and other organizations have engaged in a lot of outreach and education activities in the coal fields to let the affected populations know about the statute, and in that time we've had just over 100 of these cases filed. Thank you. Mr. Solomon's told you that we need to read statutes carefully, and indeed we do. The operative statute here is Section 1556 of the Affordable Care Act. As this court recognized in the Stacey case, the language of that statute is plain and unqualified. It applies to all claims that meet the time-filing limitations of the statute. Minors' claims and survivors' claims, original claims and subsequent claims. It makes no distinction among them. The Sixth Circuit recognized the same thing in Vision Processing v. Groves, which was issued after briefing was complete in this case, and the Third Circuit recognized the same thing in the B&G Construction case. Now the primary defense that the operators have to these claims is that they violate race judicata. Race judicata, of course, is an affirmative defense, and it is the operator's obligation to establish all the elements of that defense. This court has defined three elements for a race judicata defense, a prior action involving the same parties, which we have here, and which resulted in a final judgment, which we also have here. The third element, however, is that the two actions must involve the same cause of action. A cause of action has two dimensions. It has a legal dimension, that is, what is the basis or theory of relief, and it has a factual dimension. Does it arise out of the same facts, the same evidence and documentation as the prior claim? Subsequent survivors' claims under ACA Section 1556 are different causes of action than the original claims for two reasons. First, they are based on a theory or basis of relief which did not previously exist. Race judicata will bar the adjudication of a subsequent action only to the extent that it involves a theory of relief that actually was or could have been presented in the prior action. And that's important, could have been. Could have been. And here the theory of relief that is now being pursued by Mrs. Richards and Mrs. Morgan is that they are automatically entitled to benefits based on their husband's lifetime awards. That is a theory or basis of relief that was not available to them when they filed their original claims. At that time, they had to prove that their husband's deaths were due to pneumoconiosis. Now, the cause of their death is irrelevant. Congress has created an entirely separate path. What does that do to Regulation 718.205? Section 718.205 and the current regulations implement the pre-2010 version of the Black Lung Benefits Act under which a survivor could only obtain benefits by proving that a minor's death was due to pneumoconiosis. Now Congress has come in and said there's a different way for this group of survivors to establish entitlement. It has, in fact, created a new cause of action, a new basis of relief, which was not previously there. Even if you look at these cases on a factual basis, however, the new claims filed by Mrs. Richards and Mrs. Morgan are based on different- I'm sorry. I think, certainly to my ear, what was implied by Judge Niemeyer's question is what's taking the Secretary so long? To change the regulations? Unfortunately, the wheels of the regulatory process grind very, very slowly. We have a proposal out there. If all goes well, it will be promulgated as a final regulation this September. I believe the comment period has now expired, but the period for the Department to respond to those comments is still ongoing, and there still has to be some review by OMB and all the others. That regulation, what does it do? That regulation will do a couple of things. One, it will amend Section 718.205 to specifically acknowledge that Congress has created a different path of entitlement, that is automatic entitlement for survivors of minors who received lifetime awards. It will also amend Section 725.309, the subsequent claim regulation, to recognize that subsequent survivors can pursue claims as well as survivors filing their original claims. Will it find that Congress explicitly wanted retroactivity? Yes, Your Honor. I mean, that's plain from the face of the statute itself. The statute was passed in 2010, but Congress said it applies to claims filed from 2005 onwards. That's clearly, you know, Congress cannot have been any plainer in saying that this will apply. And to subsequent claims. And to subsequent claims. Will the regulation, I realize we're outside the record, but will the regulation expressly address subsequent claims? Yes, the regulation will address subsequent claims. There's a citation in our brief to an Internet site where you can look at the regulatory proposal. Thank you. You were getting back to the second part of race judicata. Yes, Your Honor. The facts that were at issue in the first claims filed by Mrs. Richard and Mrs. Morgan were medical facts. What did their husbands die of? What diseases did they have that caused their death? What was the origin of those diseases? That involved a very intensive weighing and sifting of medical opinions, autopsy evidence, whatever else was introduced. That's all gone now. We're looking at different facts. A fact that was not of any importance before, that is whether or not the minors received a lifetime award. Now, there's been some discussion of, you know, changing burden of proof. There's really no change of burden of proof here. The widow, in these cases, still have to establish the elements of their claim, but Congress has changed the elements for this group of people. They still have to prove, one, that their claims are filed within the time limitations of Section 1556. Two, they have to prove that they are, in fact, the survivors, the eligible survivors of these deceased minors. And three, they have to prove that the minor received a lifetime award. Now, obviously, those facts are much easier and simpler to prove than the medical ones. If a cause of action has to be the same under res judicata, would a different list of elements to establish that cause of action be the same or a different cause of action? Well, I think, Your Honor, it has to look very, very carefully at any statute changing the elements and see exactly what it is that it changes. You know, there is no, despite what the operators argue, we're not arguing that any change by Congress will create a new cause of action. You have to look very carefully, one, at the language of the statutes involved, both the old statute and the new statute. Second, you have to look at the context. You know, is this arising in traditional civil litigation or is this arising in the administrative context? Because this Court has recognized that the strictures of res judicata are a little looser in the administrative context than in traditional civil litigation. And third, you look at whether or not Congress has actually said, we want this to apply retroactively for you to go back, and certainly that's what we have here. You mentioned that this was a time window, but it really doesn't close off claims, at least not on the back end. It just requires that the claims be filed after a certain date and be pending after another date. Is that how you read that? Your Honor, the time limitations have a couple of different effects. Certainly the time limitations are directly applicable in the 15-year presumption case, the law that you discussed in the prior case. Whether those are filed by survivors or by minors themselves, the reintroduction 15-year presumption only applies to certain claims. In respect to subsequent survivor's claims or survivor's claims in general, there's still going to be, unfortunately, a handful of claims that were filed before 2005 that are still under active litigation, usually because they're being modified. And those can be dismissed and refiled? Well, they could be dismissed. You'd have to wait a year for it to be refiled, for it to be a subsequent claim. And, of course, the widow would have to live another year. Most of these survivors are very, very old. I think the widows in this case are ones in their 80s and ones in their 60s, I believe. Of course, I'm getting towards 60 myself, so perhaps I don't believe quite that old. But nonetheless, most of these widows are, in fact, quite elderly. They do have to keep going until they have the opportunity to do that. But the real effect of the time limitations in the subsequent survivor's claim context is it really puts a burden on a widow or widower to come forward and file a claim. Unlike previous statutes which said, you know, we want the department to go out and notify people or we want the department to automatically take another look at claims, that's not what happens here. Although you say that you have gone out. Well, I mean, what has happened is that the department did a little bit of education to let the affected populations know that the statute had been passed, but we didn't specifically address subsequent survivor claims. However, the United Mine Workers Benefit Claimants Association, perhaps the claimants bar, have done outreach and education efforts to let them know. But if somebody does not file a claim, we can't do anything. It's up to them. They've got to initiate the process. They've got to come forward. Your Honors, I'll be happy to answer any other questions you might have. Thank you, Mr. Joyner. Thank you. Ms. Snyder, I think you're next. Well, Eugene Carbide would agree with the Director in that there is a factual element to res judicata, and that factual element is probably the most significant here because it seems like what the Court is struggling with is trying to decide whether or not there is a new cause of action. It's our position that this Court has set forth the test very specifically, the same one that Mr. Joyner was discussing, saying that there are elements that have to be looked at in the terms of res judicata to decide whether or not there is a new cause of action. And that is Nash County Board of Education v. Biltmore and also the Pushnell v. United States. Both those are cited in the reply and the opening briefs. That three-part test defines that for the purpose of whether or not there's identicality of the cause of action, it comes down to whether the operative facts have changed. Here, the fact that he was receiving a minor receiving benefits at the time of his death has not changed. What's changed is the significance that they're placing on the fact. Well, I understand that. What happens if the law that supports the cause of action comes in with a new theory? Can there be a new cause of action? No, sir. And those two cases that I just cited address that issue specifically. They say that it is the transaction, the facts, that prevails, not the legal theory. You don't disagree with counsel's description of res judicata or claim preclusion insofar as an important element is that you could have brought the claim at the time you brought the initial claim, right? You could have brought it. You have breach of contract, you have negligence, you have strict liability, you have all these theories, and if a theory didn't exist at the time you bring the first claim, then you can't bring that claim, right? We disagree, Your Honor. She could bring a claim. She brought a claim for survivor's benefits. She's seeking the same benefits. So you don't believe there's a legal element to res judicata's description of a claim? You would limit it to common cooperative facts? I would limit it to the way that this court has defined it. I'm not saying that there wouldn't be a legal element to it. What do you say about my ADA hypothetical that your brother counseled? In your situation, I would say that under the ADA hypothetical, the person continued to work, and she continued to have exposure to that situation. That would be very similar to the Lawler case that was cited by the board. It was the only case cited by the board here where there are continuing actions, and when there's continuing actions, res judicata, there would be a new cause of action. Here, there's no continuing actions. He is dead. And she is a widow. And she's a widow today, and she was a widow the day after he died. But it's not the fact that she is a widow that gives her the right to the benefits. Well, a surviving widow of a coal miner who was awarded lifetime… That's only one fact. The other fact is he has to be, in order for the ACA to apply, he has to have the other fact that he has to have been awarded. And then there is the unspoken fact she has already litigated a claim for the same benefits. It's the same… What if after he died there were no survivor benefits under the statute? None. When the miner dies, the benefits end. She went into court. She said, well, under the common law, I'm entitled to some benefits, some theory of survivorship. And they throw her out. And then Congress comes in and says, during the period, during the actual period back to 2005, we're going to allow her to make a claim with these benefits. What's your state on that? Is that precluded by she brings a claim under the statute now? I think that's very similar to the Kumar case that we cited in the reply brief that is going to be before this court. That is a situation where there is you go to court and they say you're thrown out because there's no cause of action. Now Congress comes in and they create that cause of action, as they did in the case of the USS Cole bombing. And they say now there is a new cause of action. In the Eastern District of Virginia, the survivors went in and they tried to file under the new cause of action. If Congress created any benefits for survivors and she files a survivor claim and then changes it materially, significantly, then the change doesn't authorize her to come back. In other words, once she adjudicated the first time under the standards that Congress created, she barred it. That's correct. She's seeking the same benefits. She had her fair day in court. So your answer to Judge Niemeyer is even if there was no such thing as a survivor's claim but she went to court anyway and on a 12B6 or judgment on the pleadings, judgment in favor of the defendant, your answer to Judge Niemeyer is race judicata still applies post-amendment when Congress had now created a cause of action. That was the hypothetical he gave you. Yes, sir, and it would still apply. I see my time has expired. Thank you. That was a dramatic close. I was like, oh. All right, Mr. Solomon. As a first matter, I would like to address Judge Davis's point about the remedial statute and to say that for 40 years, the Supreme Court has been holding in case after case, including Black Long Cases and Long Short Cases and Labor Cases and you name it, that this is not an operative correct principle of statutory interpretation and we're still talking about it. I understand it, but the Supreme Court has been very clear, even in Black Long Cases. Also, Ms. Snyder mentioned the Pujol case, your case, which cites some other Fourth Circuit cases. I think that defines cause of action. That gives the definition in the Fourth Circuit for what constitutes cause of action. It isn't the criteria or the various bases for providing a remedy for harm that occurs between two entities. It's the harm that occurs. It is not the legal element. I do not believe, and I do not believe that the case law, including your own case law, supports the proposition that there is a legal element to the definition of a cause of action in the sense that we're talking about it here. Do you disagree with Mr. Joyner, then, in his definition? He has no cases to support his definition, none, zero, other than cases where Congress has expressly stated in the statute that we want this to apply to everybody back to whenever. What about in this case? Do you think Congress said that? No, they didn't, and I have something to read to you, which is even though I have my doubts about later legislative history, you credited it in Stacey, I think later legislative history raises problems, but here in this court thought it was useful in Stacey, and it says that this section, this new section that we're talking about here, will apply to all claims that will be filed henceforth, showing some interest in the future, including many claims filed by minors whose prior claims were denied or by widows who have never filed for benefits, or by widows or minors whose claims are pending when it's filed. So, you know, the implication here is that people who wrote this did not expect to reopen all the old previously denied survivors' claims. And, you know, there's no statute I've ever seen that says that encompasses the principles of res judicata. It never says we're going to apply res judicata in the statute. I don't think Congress has ever said it. But the Supreme Court has said that it always applies. And it always applies to the cause of action, not something new as in your example, Judge Davis, or in the Lawler case where new operative facts occurred, where there was additional harm to the parties, but in those kinds of situations where the operative facts, core facts that caused the harm. I'm going to try to get close to this case. It's not this case, but it addresses a problem I'm having. Congress said we're going to provide the spouse with a survivor claim. And the survivor claim is dependent on the spouse showing that the death was caused by pneumoconiosis, the statute as it was. And they call it cause of action for survivor claim. Then Congress said we're going to vacate that statute and we're going to put in a new statute and we're going to get rid of that cause of action. And instead we're now going to provide the widow with a joint annuity for the minor's benefits so that she partakes in the same benefit he had until she gets married or dies. She files a claim under the first is denied because she can't prove her case. So then she makes a claim for the joint annuity. Race judicata? It is race judicata unless Congress says otherwise. You don't get a second, even in the Supreme Court decision in Pittston Coal Group, which is a black-owned case, where they held that ordinary principles of race judicata apply. And they held that where the law changes. It was a case where the law changed, not by statute but by judicial decision. And the people came back and they said, well, you've changed the criteria, now I'm entitled. And the Supreme Court said, nine to nothing, by the way, that the principles of race judicata bar you folks from coming back to try to take advantage of this change in the law. Now, if Congress had changed the law and said we want this law to apply... I'm trying to suggest that Congress thought the initial claim was her own claim but she had to prove an additional element that the minor didn't even have to prove. They got rid of that cause of action and then they said we're just going to award you a benefit, which is a continuation of the minor's benefit until your life or to your death. I think it all depends on what Congress says and how they do it. They called it annuity. I don't care what they call it. Does that help? It doesn't help me. Help Congress? Well, I know it didn't help you. No, it's your word. It's not my word. And you used the words cause of action and those are your words, not Congress's. They called it a cause of action. We're providing the surviving spouse with a cause of action. She has to prove these elements, he receiving benefits, his death was caused, and so forth. Congress said we're concerned. Let me change your hypothetical a little bit and agree with you on a comparable hypothetical. Congress comes back and said we're concerned that all these widows were denied. And so what we're going to do is we are going to write a law that says that all these widows who were denied are now entitled. And we mean to cover all the widows back to whenever. And I think that maybe that would raise my due process question. There are financial issues there. But I think that Congress, aside from the due process issue, could probably do that and then the employers could raise whatever defenses they wanted. But the operative question here is whether Congress has expressed an intent that sufficiently overcomes this huge, powerful body of law on res judicata and retroactivity and the definition of cause of action that we live with and that has existed for a very long time. And I don't think they did that here. Okay. I think the issue is pointed up. We've got to do our work. We'll adjourn court until tomorrow morning and then come down and recouncil.
judges: Paul V. Niemeyer, Andre M. Davis, Albert Diaz